If it pleases the court, good morning, your honors. I've been used to pronouncing BAP-SIPA, BAP-SIPA, so I won't say BAP-CO. So our opinion is that, well, Apelli states that the BEARD test, and it's also the Moroni test, does not apply post-BAP-SIPA. But if you read the C.O.T. case, so if I'm pronouncing that right, they put in a Moroni test, which is word for word the same as the BEARD test. And they apply it to ambiguous, let's say, statutes, not statutes, reports, reports. There would not be a BEARD or Moroni test to evaluate a report that had 540, you know, tax return 540 was unambiguously a tax return. There wouldn't be the BEARD, I'll call it the test. The BEARD test is an ambiguous report, kind of what people were talking about before, I think, but an ambiguous report. So you have the four criteria. That ambiguous is the same as equivalent. It's an equivalent report, and it becomes when the BEARD. So your position basically is that to be an equivalent report, it has to be a return under the BEARD test or some variant of the BEARD test. Is that right? No, I think it's the BEARD test is applied not to an unambiguous 540 return on the Franchise Tax Court forms. It's applied to something else that has to be evaluated. So it starts out as an equivalent return. And then when the BEARD test says, okay, it makes the grade, it's a tax return. That's what it is. What I'm trying to say, I was gonna say, Mr. Ito, Mr. Lee, in his brief seems to make two categories. And he says the BEARD, the whole Franchise Tax Court argument why the BEARD test doesn't count is that, well, Mr. Ito said, the BEARD test only replies to tax returns. Well, this is not a tax return. We're talking about an equivalent report, of course. But that doesn't imply that there's a difference between a return and an equivalent report. Otherwise, why would Congress have used the two different words? I think, well, first of all, I don't think not exactly because first, I think Congress used it to simply codify BEARD, but it sort of doesn't make sense at all logically to say we're gonna take the BEARD or Moroni test and look at this ambiguous report. And while ambiguous would be equivalent of, well, is an equivalent report. We're gonna look, because we're not saying it's a report now. Now that we've evaluated it and we say it is a return, then we're gonna argue, well, the BEARD test only applies to returns. Of course, it's only a return because the BEARD test said it was a return. And if you look at the way the court discusses it in COD, they don't make that distinction. They say the same thing I'm saying, that there's a wording in there. They have the Moroni test. And once it passes or fits the Moroni test, now it's called a return. And I just don't think that's too fine a distinction. Now, I'm not arguing, I'm not gonna try and persuade the panel that the court in COD was illogical, or I'm not gonna try and say that that Maryland statute doesn't really seem to fit an equivalent return. My only argument, and I didn't hammer it home in the opening brief, but it's there, is that BAP-CIPA does not overrule these tests because obviously it doesn't because COD used it. So I'm gonna take back something I said in the opening statement, opening brief, and that was, I said we were in the minority. But if you consider COD with all the pre-BAP-CIPA, all of which used evaluations like Moroni, and all which were state statutes that were very close, they were, you know, they said if the IRS says you must send a report, you must send it. You know, you'll get in trouble, you'll get some criminal reports out. So I'm just saying, they, prior BAP-CIPA, and there's no reason not to use them, just thought it was not fair to the taxpayer to take this thing you'll get from the IRS and to know that you're going to send it to your state tax agency. And that's, I would say, Congress, maybe it's a badly written statute, but they use the word equivalent, the hanging paragraph, and it doesn't say equivalent in about, well, I would say in this case with the Berkovichs, it's not equivalent. If you look up the word equivalent in the dictionary, it's a similar in effect. But isn't it similar in effect in that it's telling the FTB that, hey, the federal government has said my federal returns were wrong. Maybe my state returns were wrong too. So maybe my state returns should be adjusted. Isn't that pretty much equivalent to saying, hey, my return is wrong, and isn't that like a return in some respects? Your Honor, that's one way. It is similar in effect, but it's dissimilar in a very huge way that impacts my client. And that is, let's say the real world, everyone knows you have to file a state tax return. And when you don't, you're doing something wrong. You're probably evading taxes. And even in COT, they mentioned one of the reasons for 523A was, one of the very important reasons was sort of not to punish, well, that this was a wrongdoing. It mentions there's some wrongdoing when you don't file this. That's really different in the Berkovichs' case and in everyone's case. If you get a report from the IRS said we've re-evaluated, I would, I say, take judicial notice for common sense. Most people don't know you must then send that to the Franchise Tax Board. I mean, you could read, probably it tells you you should, but everyone knows you've got to do the tax return. So this is without fault. The best estimate here with the Berkovichs, we're not trying to evade taxes. You could say the effect is quite different. I'm not, you take people who didn't file their tax return, they, yes, sound like they're trying to evade taxes. The people who didn't send in this report and forward it, most likely just didn't know. I'm not testifying, but I kind of didn't know this because I don't do my taxes, but I didn't know that either. So I think, again, the argument- But is it really a culpability kind of a standard? Are we supposed to compare taxpayers based on whose behavior is worse, who had more reason to do the thing they didn't do? Is that what the statute requires us to do? Well, when you use the word equivalent, that can be put in the argument. And again, I'm not, I don't think, myself or the court, I'm not sure we should, you know, parse through the logic of the COD case. I think, for two reasons, one is- Isn't the point of a fairly direct requirement in the statute to not have to worry about culpability? I mean, I know you may not interpret the statute. That's the point, right? We don't want to be trying to weigh that here. Well, that, you know, your honor is talking as if we were legislatures and talking about policy. No, I'm asking you a fairly simple question. This is a fairly simple requirement. Now, I realize that you want it to be not quite so simple, but, you know, I mean, I don't think I need to care about culpability at this. I may have my own opinion about it, which is neither here nor there, but the point of the statute is to make this a simple determination, isn't it? Well, two answers to that. One is COD puts, mentions the culpability is important and that served. But secondly, the pre-BAPCIPA case, I'm not conceding because what your honor saying seems to say, let's forget pre-BAPCIPA. There's no reason to, I sent, I have a case, I'm trying to find it. I sent an email because to councils, because I thought I was citing a case that hadn't been cited. So, but luckily I found another one that's mentioned in COD and that would be Dahmer's and Dahmer's it's a BR case, but it states that, that the beer test still remains. The only place that the beer test disappears is the hanging paragraph says, well, you can't use it in the even was meant to do that. But other than that, there, there is a Dahmer. It's not a ninth circuit case saying the beer test remains pre post post-BAPCIPA. So again, I, what your honor's asking sort of is how would I, if I was a judge rule on this RTC, I'm trying to find the section, but on the California one, you know, I might, I might go along with COD that sure sounds similar. However, I'm just saying that the courts pre-BAPCIPA and it's mentioned in my opening brief, I do have the names of about four courts, their circuit courts that say that are making the evaluation your honor's asking me to make. And they say, no, it's just, you know, these statutes are state statutes that you must forward the IRS, but they invariably say that doesn't apply. We're, we're going to use the bias and prejudice in favor of the debtor to not take something that could slip by the average person and deny a discharge. So, okay. You're, you're a little bit inside of five minutes. So if you want to reserve, you could stop now, but if you want to finish your thought, you may, whatever, whatever you want to do, go ahead. I'm just, you know, actually I was finished. I finished all four and a half. Four and a half. Okay. Very good. Thank you, Mr. Lay. May it please the court. My name is Donnie Lay, counsel for the appellee, the California Franchise Tax Board. Just wanted to address some comments made by Mr. Smith earlier, and that's that the appellant misconstrue, misconstrues FTB's argument. We're not saying that the beard test doesn't apply at all. It certainly applies in cases where there's a because we're applying it to an equivalent report or notice. And the only reason why it came up is because just like in Maryland versus Seati, Mr. Smith makes the argument that the addition of the words equivalent report or notice meant that the report or notice must be equivalent to a return. And since the report required by RTC 18622A, which I'll just refer to as RTC is not similar to a return, the failure to file it does not trigger the application of 523A1. So the first, so what the brief says is that, well, sometimes the RTC report is going to be similar to a return for these various reasons, but it's not completely a return. But even then it doesn't matter because the addition of the words equivalent report or notice contemplated a report that is required under the RTC. So it's whatever it is that the state law would require to report for a taxpayer to report changes that the IRS would make. So with that, this case is pretty straightforward. It concerns the dischargeability of a tax debt when the debtor has failed to comply with a reporting duty under California law that required the debtor to report federal changes or corrections made by the IRS. Mr. Berkovich had a duty to report those changes and he failed to do so. So I'll pretty much keep my comments brief in that all of Mr. Berkovich's arguments were soundly rejected in the lower court's memorandum of decision and new arguments raised for the first time in this appeal are very similar to those arguments previously rejected in the fourth circuit in this decision of Maryland versus Seattle. Every bankruptcy court within the ninth circuit to address the issue has adopted Seattle's analysis and holding. This panel should do the same and find that the report required by the California RTC is an equivalent report or notice within the meaning of bankruptcy code section 523 A1. And again, Mr. Berkovich failed to comply with his reporting duties under the RTC. He failed to file the required reports and as a result, those additional tax debts are exempt from discharge. For these reasons, I respectfully request that this court affirm the bankruptcy court's ruling made in FED's favor. Thank you. Thank you. Any questions from the panel? Okay, all right. Mr. Smith, back to you for four minutes and counsel. Mr. Lee says we're applying it to an equivalent report of return. So he's the same doing the same thing Mr. Ito is doing and saying that this statute seems to have two clear cut categories, a return, a bankruptcy return and an equivalent report. And then he also says the Beard test is still applicable. Well, then how would the Beard test was not, but he's probably saying it's only applicable to a tax return, but that's what the Beard test is meant to find out. You wouldn't apply the Beard test if someone filed a return that said 540 tax returns signed, you know, FTB forms, you'd only apply it to something that you weren't sure of. And that would be, you'd apply it to equivalent report return. And that's by the way, Mr. Lee says we're applying it to equivalent reporter. I don't disagree. Absolutely. We'll apply it. Now, again, if we were sitting here and there was no prior BAP CEPA rulings, I probably would go along with the argument that this California return has a lot of equivalencies. That's for sure. You don't have to sign it, but you go to jail if you don't. And you do have to But we don't depend on Andrew Smith's opinion. This very same evaluation is done prior BAP CEPA, and there's no reason to ignore those decisions. And they all take state requirements that you must forward us the IRS report. And they all find they don't want to do it because it's too onerous and it goes against the prejudice or presumption that we're going to favor the debtor. Because in this case, from the Berkovich's viewpoint, they must really be surprised that they violated some rule and they're going to lose a good benefit, a discharge. The Franchise Tax Board acknowledges there is no Ninth Circuit ruling. But again, I guess I won't go on and on about the evaluation. I'm just saying the majority looking at these exact type evaluations under Beard or Maroney, and these exact type state requirements that you forward an IRS evaluation, the majority are on our side that you're not going to do that to harm the debtor. And the BAP CEPA, a lot of litigants, if it helps them, just say prior BAP CEPA, post BAP CEPA. Well, I don't think in this case that the statute simply BAP CEPA does not come into play. The only way the statute sort of abrogates this Beard is on the deal about late reports where debtors use the fact of a late report and said, it's an equivalent. And they got rid of that. But when you're coming to evaluating it for our purpose, there's simply no reason to ignore BAP CEPA. And I guess I'll leave it at that, Your Honor. Thank you. Okay. All right. Thank you very much. The matter is submitted. Thank you.
judges: Farris, Lafferty, Spraker